UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUCIANA A.,[1]

                                Plaintiff,              Case # 20-CV-1448-FPG

v.                                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

## INTRODUCTION

Plaintiff Luciana A. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 13. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In November 2017, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 58-59, 69-70. She alleged disability since October 2017 due to cervical fusion surgery, sciatica, neuropathy, and bulging disc in the cervical neck area. *Id.* At a

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

1

hearing held in August 2019, Plaintiff clarified that she was seeking a closed period of disability from October 2017 to January 2019. *See* Tr. 33-34. In September 2019, Administrative Law Judge John R. Allen ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 10-20. In August 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity after returning to work in 2019, but he proceeded through the remainder of the sequential evaluation process for the preceding period. Tr. 13. At step two, the ALJ found that Plaintiff had severe impairments of cervical degenerative disc disease with surgical fusion and obesity. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff had the RFC to perform light work with additional limitations. Tr. 14. At step four, the ALJ found that Plaintiff could perform past relevant work. Tr. 19-20. Accordingly, the ALJ found that Plaintiff was not disabled from her onset date "through the date of [] decision." Tr. 20.

### II. Analysis

Plaintiff argues that remand is warranted on two grounds. First, the ALJ did not properly evaluate the opinions of treating source Luke Martinic, PA-C. Second, the ALJ failed to consider a closed period of disability. The Court concludes that remand is not warranted.

#### a. Martinic's Opinions

Before addressing Plaintiff's first argument, some background may be helpful. Plaintiff alleges a "history of ongoing problems of cervical discogenic pain." Tr. 297; *see also* Tr. 315. In May 2017, Plaintiff obtained a physical therapy evaluation for her cervical neck pain. Tr. 235. The condition caused pain to radiate down her arms and legs. *Id.* At her evaluation, Plaintiff complained that her neck pain prevented her from rotating her head to the left, from walking without difficulty, and from "sitting or standing for prolonged periods." *Id.* Plaintiff had been out

4

of work since February 2017, and physical therapy was her "last option" before surgery. *Id.* In early October 2017, Plaintiff underwent fusion surgery on her cervical spine. Tr. 297. Plaintiff's alleged onset date corresponds to the date of her surgery. *See* Tr. 59.

On October 11, 2017, shortly after her discharge from the hospital, Luke Martinic, P.A., evaluated Plaintiff. Tr. 306-08. Plaintiff raised no complaints about her condition except for "achiness and stiffness at the base of the axial neck," which was to be expected. Tr. 306. Martinic advised Plaintiff not to perform any "heavy lifting until further notice." Tr. 307. No other restrictions were noted in his treatment note. *Id.* In November 2017, Plaintiff reported to Martinic that her neck pain had improved over the last month. Martinic directed Plaintiff to avoid heavy lifting and excessive bending or twisting when out of her brace. Tr. 311.

In January 2018, at a face-to-face interview for her benefit applications, Plaintiff was not observed to have any difficulties sitting, standing, walking, using her hands, or otherwise participating in the interview. Tr. 174; *see also* Tr. 17.

On February 3, 2018, Plaintiff attended a consultative examination with Gilbert Jenouri, M.D. Tr. 335. Plaintiff reported having "difficulties with her neck," including "continued neck pain" that can rise to "10/10" intensity with activity. *Id.* Plaintiff stated that she was able to shower and dress herself. *Id.* Dr. Jenouri observed that Plaintiff was in no acute distress, had an antalgic gait, needed no help to get on or off the exam table, and was able to rise from a chair without difficulty. Tr. 336. Plaintiff exhibited neck tenderness on palpation. Tr. 337. Dr. Jenouri opined that Plaintiff was moderately limited in her ability to walk, stand for long periods, bend, climb stairs, lift, and carry. Tr. 337.

On February 22, 2018, Plaintiff met with Martinic. Plaintiff stated that her neck pain was "8/10 on average." Tr. 363. She complained of spasms in her left shoulder. *Id.* Martinic explained

to Plaintiff that "as her fusion mass [] consolidates her ongoing pain will likely improve." Tr. 364-65. He directed her to increase her activity level "within her tolerance of pain" and to lift no heavier than 20 pounds. Tr. 365.

By June 2018, Plaintiff stated that she had experienced improvement in her neck condition but that she continued to have "good and bad days." Tr. 541. After an examination, Martinic directed Plaintiff to lift no more than 40 pounds, but he otherwise identified no limitations. Tr. 544. He continued to believe that her condition would improve as the "fusion mass [] consolidate[d]." *Id.* Martinic advised that Plaintiff could "gradually continue to increase her activity level as tolerated." *Id.*

In July 2018, Plaintiff reported that she was ambulating without assistance and had no stiffness, tenderness, weakness, tingling, or limited range of motion in her neck. Tr. 499. Plaintiff still complained of neck pain, but over the next months, she routinely rated her neck pain as "mild." Tr. 466, 472, 491, 495, 499. At visits regarding these complaints, providers did not suggest any further treatment beyond regular exercise. *See* Tr. 469, 475, 494, 498, 501-02.

It is undisputed that on January 23, 2019, Plaintiff "improved to the point that she was able to return to work." Tr. 229 (Plaintiff's hearing brief). Plaintiff now works as a "human resource administrator" for a hospital. Tr. 37.

In March 2019, Plaintiff stated at a follow-up appointment that her neck pain had "lessened" since the surgery but that residual pain existed throughout the base of her neck and right shoulder. Tr. 455.

In July 2019, Martinic completed a medical source statement. Tr. 566-70. Among other things, he opined that Plaintiff could only stand for twenty minutes at a time, would need three

unscheduled breaks each workday, could never climb stairs, stoop, or crouch, and would be off task 15% of each workday. *Id.*

In his decision, the ALJ evaluated the opinions that Martinic issued during his treating relationship with Plaintiff—specifically, his November 2017 notation that Plaintiff should avoid heavy lifting and excessive bending; his June 2018 notation that Plaintiff should avoid heavy lifting greater than 40 pounds; and his July 2019 medical source statement. *See* Tr. 17-18. As is relevant here, the ALJ found the November 2017 notation and medical source statement unpersuasive. *Id.*

On appeal, Plaintiff contends that the ALJ's evaluation of Martinic's November 2017 notation and July 2019 medical source statement were erroneous because, although the ALJ cites examination findings and hearing testimony to support his view of the record, he did not sufficiently explain "*how* these examination findings and testimony were inconsistent with [] Martinic's opinions." ECF No. 11-1 at 20. As a result, the ALJ failed to "construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached." *Id.* at 21. The Court disagrees.

While an ALJ "should set forth a sufficient rationale in support of his decision," *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982), courts in this Circuit have held that "even if the ALJ failed to adequately explain his reasoning, remand is not necessary where it is conceded that any new analysis would have no effect on the ultimate determination." *Rivera v. Colvin*, No. 13-CV-610S, 2014 WL 4829375 at *4 (W.D.N.Y. Sept. 28, 2014). "Moreover, where the evidence of record permits [the reviewing court] to glean the rationale of an ALJ's decision, [the court does] not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a

conclusion of disability." *Natividad S. v. Comm'r of Soc. Sec.*, No. 20-CV-1507, 2022 WL 2718511, at *3 (W.D.N.Y. July 13, 2022) (internal quotation marks omitted).

In this case, the Court can reasonably discern the ALJ's rationale for discounting Martinic's November 2017 notation and July 2019 medical source statement.

As to the notation, the ALJ noted that Martinic "employed vague language" that could not be readily translated into functional limitations. Tr. 17. Furthermore, Martinic did not "support [this] limitation[] with a substantive explanation." *Id.* These were permissible reasons to reject Martinic's identified restriction. *See Steven H. v. Comm'r of Soc. Sec.*, No. 20-CV-404, 2021 WL 1893476, at *4 (W.D.N.Y. May 11, 2021) (ALJ could reasonably reject "vague" medical opinion that included no "specific functional limitations"); 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the . . . supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be.").

As to the medical source statement, the ALJ sufficiently articulated a reasonable basis for finding it unpersuasive: it was inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). The ALJ reasonably viewed Plaintiff's condition after surgery as one of gradual improvement. *See* Tr. 16-17. Indeed, it cannot be disputed that Plaintiff's condition improved significantly in the course of the fifteen months after October 2017 (the date of her surgery), as she was able to return to work. *See* Tr. 17. This is consistent with the objective evidence, which, as the ALJ discussed, showed steady improvement in her cervical fusion mass. *See* Tr. 16, 310, 364, 544, 548. Martinic noted that Plaintiff's pain level would "likely improve" as the fusion mass "further consolidate[d]" over time. Tr. 364. In November 2017, Plaintiff's imaging showed that

the fusion mass was "not yet solid," and Plaintiff could only stand in a "guarded cervical posture." Tr. 310. By September 2018—less than one year after the surgery—the cervical fusion mass was "solid throughout," and Plaintiff was able to stand with a "normal cervical posture." Tr. 547-48.

There is evidence that, over this same timeframe, Plaintiff experienced less neck pain and fewer functional limitations. At a January 2018 interview, Plaintiff was observed to have no difficulty sitting, standing, walking, or using her hands. Tr. 174. The ALJ emphasized these observations, writing that they "represent a unique insight into [Plaintiff's] functionality . . . outside the context of a formal medical examination." Tr. 17. These observations were inconsistent with the "acute functional deficits" that Plaintiff sometimes alleged to have during this period. *Id.*

Furthermore, while Plaintiff stated that her neck pain was "8/10 on average" at a February 2018 appointment, Tr. 363, Plaintiff reported improvement over the ensuing months. In April 2018, a state agency consultant concluded that Plaintiff could perform light work with additional limitations—an opinion that the ALJ found persuasive. Tr. 17, 64. Thereafter, Plaintiff repeatedly reported mild neck pain with no associated weakness, stiffness, or tenderness. Tr. 503 (June 2018), 499 (July 2018), 495 (August 2018), 491 (September 2018), 485 (October 2018). As the ALJ noted, Plaintiff received conservative treatment and did not seek out more rigorous interventions during this period. Tr. 16; *see also* Tr. 488, 498, 502, 506. And at the hearing, Plaintiff testified that she noticed significant improvement from Spring through Fall 2018. *See* Tr. 41, 50-51. By the end of 2018, Plaintiff was actively looking for work. Tr. 51. Indeed, even though Plaintiff continued to complain of residual neck and right-shoulder pain from Fall 2018 through Spring 2019—complaints which might otherwise permit the inference that Plaintiff was still unable to

work—the ALJ could reasonably find that such pain was not work preclusive because Plaintiff did, in fact, work during that period (beginning in January 2019). *See* Tr. 44, 546, 550.

In short, the ALJ reasonably concluded that "as of the middle of 2018," Plaintiff's condition had improved to a point inconsistent with the debilitating condition that Martinic presented in his medical source statement.[4] Tr. 18. The ALJ's failure to fully articulate his rationale, or express the pertinence of each specific piece of cited evidence, does not warrant remand where, as here, the Court can glean the ALJ's reasoning "from the decision as a whole." *Jacob M. v. Comm'r of Soc. Sec.*, No. 20-CV-1093, 2022 WL 61007, at *3 n.4 (W.D.N.Y. Jan. 6, 2022).

Accordingly, relief is not justified on this ground.[5]

### b. Closed Period of Disability

Next, Plaintiff argues that the ALJ erroneously failed to consider a closed period of disability. *See* ECF No. 11-1 at 24-25.

"A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting

---

[4] Plaintiff attempts to draw different inferences from the evidence that the ALJ cites, and she marshals other evidence to bolster her view of the evidence. *See* ECF No. 11-1 at 19-20. However, the mere fact that contrary inferences could be drawn from the medical records is insufficient to justify remand. "Under the substantial evidence standard of review, it is not enough for [P]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position. To obtain remand, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Jacob M. v. Comm'r of Soc. Sec.*, No. 20-CV-1093, 2022 WL 61007, at *4 n.5 (W.D.N.Y. Jan. 6, 2022) (internal brackets, quotation marks, and citation omitted).

[5] Plaintiff points out that the ALJ incorrectly recited Plaintiff's testimony. *See* ECF No. 11-1 at 21-22. Whereas the ALJ wrote that Plaintiff was able to "grocery shop" since "around the spring of 2018," Tr. 17, Plaintiff actually testified that it was not until Fall 2018 that she could perform that activity. Tr. 41-42. Standing alone, this misstatement does not warrant remand. The ALJ's decision confirms that he was aware that Plaintiff required assistance to perform household chores and activities in the aftermath of her surgery, *see* Tr. 14, and, given the other evidence on which the ALJ relied to conclude that Plaintiff's condition had improved "as of the middle of 2018," Tr. 18, Plaintiff has not shown harmful error. *See* ECF No. 11-1 at 21-22; *see also Sepa v. Saul*, No. 19-CV-1658, 2020 WL 4048668, at *2 (S.D.N.Y. July 20, 2020) (finding mischaracterization of opinion harmless in light of other evidence in the record).

disability status." *Sandra Lee M. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 277, 283 (W.D.N.Y. 2021). "When deciding a disability claim, if a claimant is disabled at any point in time, the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of [her] claim." *Id.* "It is particularly necessary for the ALJ to consider whether a closed period of disability existed where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event, such as surgery." *Id.*

    At the hearing, the ALJ acknowledged Plaintiff's request for a closed period of disability in light of her return to work. *See* Tr. 33-34; *see also* Tr. 229. Likewise, in his decision, the ALJ acknowledged Plaintiff's return to "to work in 2019." Tr. 13. While the ALJ does appear to have ultimately framed the issue as whether Plaintiff was under a disability from her alleged onset date "through the date of [] decision," Tr. 20, rather than the end of the requested closed period, the ALJ's overall analysis implicitly rejects the propriety of a closed period. *See Decker v. Astrue*, No. 09-641, 2010 WL 4412142, at *5 (D. Me. Oct. 31, 2010) (ALJ's failure to consider closed period did not justify remand where the ALJ's conclusion necessarily "foreclose[d] the existence of such a period"); *see also Donna B. v. Comm'r of Soc. Sec.*, No. 19-CV-1163, 2021 WL 2592906, at *3 (W.D.N.Y. June 24, 2021) (finding ALJ's failure to consider closed period of disability harmless "because the ALJ's ultimate disability determination is supported by the record"); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). As discussed above, the ALJ reasonably concluded that Plaintiff's post-surgery condition improved by "the middle of 2018" to the point that she was able to work. Tr. 18. Because that point in time was less than 12 months from the date of surgery, the ALJ necessarily

11

found that Plaintiff's post-surgery condition did not last at least 12 months. *See Decker*, 2010 WL 4412142, at *5 ("Any closed period must include a disability, which by definition must have existed for at least 12 months."); *see also* 20 C.F.R. § 404.1505(a). The Court declines to remand for further consideration of a closed period of disability that the ALJ has already implicitly rejected.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 28, 2022
      Rochester, New York

                                            _____
                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York